IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Rupinder Singh Benipal,

                    Petitioner,

v.

Eric Rokosky, Warden, Eloy Detention Center, et al.,

                    Respondents.

No. CV 26-01306 PHX RM (CDB)

**REPORT AND RECOMMENDATION**
**A 208 048 541**

**TO THE HONORABLE ROSEMARY MARQUEZ:**

Petitioner, who is represented by counsel, seeks relief from detention pursuant to 28 U.S.C. § 2241. Petitioner contends his detention is unlawful and in violation of his right to due process of law. The petition is fully briefed and ready for the Court's review.

**I.    Background**

Petitioner is a native and citizen of India, born in Punjab in 1995. (ECF No. 1-1 at 10). Petitioner lawfully entered the United States with his mother on or about March 5, 2014, after inspection, on a B1/B2 visitor visa (ECF No. 1-1 at 5, 21). The visa authorized Petitioner to remain in the United States until September 4, 2014. (ECF No. 1-1 at 7). Petitioner remained in the United States after his visa expired. (*Id.*). On May 16, 2017, Petitioner was issued a Notice to Appear ("NTA") by an immigration officer; the NTA was deficient because it failed to state the date and time of the required hearing in the San Francisco Immigration Court. (*Id.*). Petitioner has resided in California since his entry into the United States. (ECF No. 1-1 at 13). Petitioner received permission to work

in the United States (i.e., an "Employment Authorization Document" or "EAD") and obtained a commercial driver's license; Petitioner was employed in the transportation industry from June of 2021 until his detention. (ECF No. 1-1 at 7, 13).

On March 4, 2025, Petitioner filed an application to register permanent residence or adjust status (Form I-485). (ECF No. 1-1 at 26). At the time of his arrest on January 2, 2026, Petitioner was scheduled for a March 25, 2026, hearing before an immigration judge in San Francisco, California. (ECF No. 1-1 at 7).

On or about January 2, 2026, Petitioner was detained by Immigration and Customs Enforcement ("ICE") in Phoenix, Arizona, "as part of a targeted operation at truck stops to apprehend illegal aliens operating commercial vehicles," initiated by ICE Enforcement and Removal Operations ("ICE ERO"). (ECF No. 1-1 at 6). During this "consensual encounter" Petitioner advised that he had authorization to be in the United States, and Petitioner presented his commercial driver's license and EAD. (*Id.*). Petitioner was not charged with any crime as a predicate for the encounter and a records check revealed no criminal history. (ECF No. 1-1 at 7). Petitioner was arrested by ICE and booked into the Phoenix ICE Field Office detention facility. (*Id.*). The basis for detaining Petitioner, as stated on Form I-213 issued by ICE ERO, was the allegation that he was removable because he had overstayed the visa issued in 2014. (ECF No. 1-1 at 6). The Form I-213 also stated Petitioner was arrested and taken into custody because he was "a flight risk due to having access to a motor vehicle hence being attested [sic] without a warrant." (ECF No. 1 at 7). Petitioner was transported to the Florence Detention Center (ECF No. 1-1 at 8) and at some time prior to filing his § 2241 petition Petitioner was transferred to the Eloy Detention Center.

Petitioner filed an application for asylum (Form I-589) and for withholding of removal on February 19, 2026. (ECF No. 1-1 at 10-18). Petitioner seeks asylum or withholding of removal (including pursuant to the Convention Against Torture) based on his political opinion and membership in a particular social group. (ECF No. 1-1 at 14).

- 2 -

In seeking asylum Petitioner alleges:

> My father was involved in political activities in Punjab and had problems with the police many times. He left India when I was a child and later returned to India around the end of 2004. After his return he again became involved in political activities supporting Sikh rights. He told my mother and me that Sikhs were being mistreated and that he wanted justice for our community. In August 2008, after participating in a protest rally, my father was threatened by the police. The next day he met with a suspicious accident involving a truck. He was taken to the hospital but died there. My family believes the police were responsible for his death because he had been repeatedly threatened by them before the incident.

(ECF No. 1-1 at 14-15). Petitioner also asserts:

> After my father's death the police started harassing my mother. They called her to the police station many times and kept her there for long hours. I was a child and became very afraid because we were alone and had no protection.
>
> In May 2011, my maternal uncle [] was beaten by police officers at our farm. He died after falling into a water drain during the beating. …. After this incident our entire family lived in fear. My mother constantly worried that I would also be harmed.
>
> In November 2012 my mother participated in a peaceful protest by village women against drugs and police support for drug dealers. After the protest she was taken by the police. When she returned, she was traumatized and crying. Later she told close family members that she had been sexually assaulted and threatened by police officers. After that she was extremely fearful and did not want to leave me alone. In 2013 the police came looking for my mother and threatened to take me with them. My grandfather had to give money to them so they would leave me. After this my mother decided we could not stay in India because our lives were not safe.
>
> We left our village and stayed in another place for some time. In March 2014 my mother brought me to the United States. I was relieved because I finally felt safe from the police.
>
> After coming to the United States, my mother and I used to go to the gurdwara every weekend and volunteer there. Through this experience, I learned about the Shiromani Akali Dal (Amritsar) (SADA). The party advocates for the rights of the Sikh community and supports the idea of creating a separate nation for Sikhs. In addition to its political goals, SADA also carries out many charitable activities, such as organizing medical camps, providing free education, and distributing food to people in need. I was deeply inspired by their dedication to serving the community.

Eventually, on January 5, 2018, I officially joined the SADA party at the gurdwara. … when members of the Bharatiya Janata Party (BJP) learned about my involvement with the [] (SADA), they began searching for me. They repeatedly asked people in my area about my whereabouts and harassed my maternal family on several occasions.

On July 1, 2024, my mother informed me that she had received a phone call from my grandmother. … My grandmother told us that four members of the [] (BJP) arrived at her house in a car displaying the party's logo. They forcefully entered the house and began smashing household items with a hockey stick. They then started threatening her and demanded to know our whereabouts. When she told them that she did not know where we were living, they angrily warned that if they discovered our location, they would not hesitate to kill us. When neighbors began gathering outside the house, the men fled the scene. The next morning, my grandmother went to the police station to report the incident. However, the police refused to file her complaint. Instead, they humiliated her and warned her not to return to the station to report anything against the BJP.[1]

***

On December 29th, 2025, my grandmother called me, and I sensed something was wrong. … after I insisted, she told me that on December 28th, 2025, she had received a phone call from an unknown number. The caller threatened her, saying they knew I am residing in the United States and supporting the [] (SADA), including providing funds. They warned that if I didn't stop supporting the SADA, I would face serious consequences if I ever returned to India.

(ECF No. 1-1 at 21-22). Petitioner expressed a fear of harm if removed to India, due to his participation in SADA events and his financial support for SADA programs in Punjab. (ECF No. 1-1 at 15). Petitioner asserts:

… [I]f I go back to my home country India then my mother and I will be killed for sure as the [] (BJP) learned about my involvement with the [] (SADA). … On July 1, 2024 and December 29th 2025 the BJP [] threatened and attacked my maternal family. So, we request the US government to grant our asylum because if we go back to India, the BJP government will kill us.

(ECF No. 1-1 at 14).

---

[1] Petitioner's mother, who is not in custody, has applied for asylum (ECF No. 1-1 at 16). She is scheduled for a hearing on her application for asylum on April 29, 2026. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 21, 2026).

- 4 -

Petitioner requested a bond hearing, pursuant to 8 C.F.R. § 1236. (ECF No. 1-1 at 2). On January 30, 2026, an Immigration Judge ("IJ") conducted a bond hearing in the Eloy Immigration Court. At the conclusion of the hearing the IJ issued an order denying release on bond. The IJ's written decision denying release states, in total:

> The respondent requested a custody redetermination pursuant to 8 C.F.R. § 1236. After full consideration of the evidence presented, the respondent's request for a change in custody status is hereby ordered:
> ☑ Denied, because
> The Court finds that the respondent has failed to meet his burden of proving he is not a flight risk if released on bond, finds that the respondent is properly detained without bond, and declines to set bond in his case.

(ECF No. 1-1 at 2).

Per the Executive Office for Immigration Review ("EOIR"), on March 23, 2026, Petitioner was ordered removed from the United States, and he has appealed that decision to the Board of Immigration Appeals. *See* https://acis.eoir.justice.gov/en/caseInformation (last visited Apr. 21, 2026). To date, no briefing schedule has been issued. *Id.*

**II.    Claims for Relief**

The parties do not dispute that Petitioner's detention is pursuant to 8 U.S.C. § 1226(a).[2] Petitioner's detention is therefore not mandatory and he was entitled to an individualized bond hearing to determine if he should be released on bond (or otherwise) if he was found to not be a flight risk or a danger to the community if released from detention. An arresting immigration officer may make an initial custody determination regarding a noncitizen; however noncitizens have the right to request a custody "redetermination," i.e., a bond hearing, before an immigration judge. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).[3]

---

[2] The federal statute authorizing detention and removal of noncitizens who overstay a visitor visa is 8 U.S.C. § 1227(a)(1)(C)(i), which authorizes removal of a noncitizen admitted as a nonimmigrant who failed to maintain their nonimmigrant status. In this circumstance detention is authorized by 8 U.S.C. § 1226 and removal procedures are governed by 8 U.S.C. § 1231.

[3] The initial determination that Petitioner should be detained as a flight risk because he had "access to a vehicle," i.e., he was employed as a truck driver, was made at the time of

In his § 2241 action, filed February 24, 2026, Petitioner notes the IJ's order denying bond does not contain a recitation or summary of the record evidence, and that the IJ's order does not reference or discuss Petitioner's claim for asylum or his application for relief from removal. (ECF No. 1 at 5). Petitioner also notes the IJ's order denying bond "does not reference" Petitioner's family ties in the United States, his authorization to work or his employment history, his community ties, or the lack of any criminal record. (*Id.*). Petitioner asserts the IJ's order "provides no reasoning that would permit meaningful review." (*Id.*). Petitioner contends:

> … his continued detention violates the Due Process Clause of the Fifth Amendment because the bond proceeding conducted on January 30, 2026 was constitutionally deficient. Although the Immigration Judge purported to conduct a custody redetermination under 8 C.F.R. § 1236, the resulting order contains no factual findings, no individualized analysis, and no articulated basis for concluding that Petitioner is a flight risk.
>
> The Fifth Amendment guarantees that civil immigration detention be accompanied by a meaningful and individualized determination. While bond determinations under INA § 236(a) are discretionary, due process requires that such determinations be based on individualized findings supported by the record and sufficient to permit meaningful judicial review.

(ECF No. 1 at 5-6). Petitioner emphasizes the IJ's decision was not "individualized," noting:

> 29. The conclusory nature of the order is not an isolated occurrence. In *Ramirez-Hernandez v. Howard*, No. 2:26-cv-00206-JCH (D. Ariz. Jan. 16, 2026), the same Immigration Judge issued an order dated January 22, 2026 denying bond using materially identical language. *See* Exhibit D, Similar Bond Orders Post Habeas. The order contains the same sentence, the same structure, and the same absence of factual findings.
>
> 30. Likewise, in *Jimenez v. Rokowsky*, No. 2:26-cv-01000-JCH (D. Ariz. Feb. 13, 2026), the same Immigration Judge issued an order dated February 19, 2026 denying bond using the identical language and format. *Id.*
>
> 31. Again, no facts were articulated and no individualized analysis was provided.

---

Petitioner's arrest. The record does not indicate whether a warrant issued at the time of Petitioner's arrest at the Phoenix truck stop, and the record does not include a Notice to Appear.

- 6 -

32. The repetition of materially identical language across unrelated cases involving different individuals raises serious concerns regarding whether individualized adjudication occurred. Due process requires more than a template denial. Each respondent is entitled to a custody determination based on his particular facts and circumstances.

(ECF No. 1 at 7-8).[4]

Petitioner "does not ask this Court to reweigh evidence or substitute its judgment for that of the Immigration Judge. Rather, he challenges the constitutional adequacy of the proceeding itself." (ECF No. 1 at 8). Petitioner argues that "[a]lthough 8 U.S.C. § 1226(e) limits review of discretionary judgments, it does not bar review of constitutional claims or questions of law." (*Id.*). Petitioner contends that because his

… continued detention rests on a conclusory, non-individualized order lacking articulated findings, his detention violates the Due Process Clause of the Fifth Amendment. Habeas relief is therefore warranted. The appropriate remedy is either immediate release or, at minimum, a new bond hearing before a different Immigration Judge at which an individualized determination is made and specific findings are placed on the record.

(*Id.*). Petitioner asks the Court to order his release or a "constitutionally adequate bond hearing before a neutral adjudicator." (ECF No. 1 at 2).

Respondents assert 8 U.S.C. § 1226(e) bars any challenge to "issues pertaining to (1) the outcome of [Petitioner's] *post-habeas* [sic] bond hearing and (2) request for a more reasoned decision beyond what the IJ provided…." (ECF No. 7 at 2) (emphasis added).[5] Respondents contend:

Federal courts do not have jurisdiction to review immigration judges' decisions in bond proceedings and Federal courts "may not second-

---

[4] In both *Ramirez-Hernandez* and *Jimenez* District Judge Hinderaker determined the petitioners were members of the class certified in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, (C.D. Cal. Dec. 18, 2025), and he also concluded their detention was pursuant to 8 U.S.C. § 1226 rather than § 1225. According, Judge Hinderaker ordered the petitioners be provided with a bond hearing. Judge Hinderaker's orders and the subsequent orders denying bond are docketed in this matter at ECF No. 1-1 at 28-37.

[5] The hearing in this matter was not "post-habeas." This typographical error is indicative of a boilerplate response to a "post-habeas" § 2241 petition. In previous § 2241 cases, such as *Ramirez-Hernandez* and *Jimenez*, when the Court has ordered a a bond hearing the subsequent hearing results in what could reasonably be described as a pro forma denial of release on bond.

- 7 -

guess the immigration judge's weighing of the evidence". *Calmo v. Sessions*, 2018 WL 2938628, *4 (N.D. Cal. 2018). …

\*\*\*

8 U.S.C. § 1226(e) states in the clearest terms that this Court cannot review an immigration judge's independent bond decisions. Rather, Petitioner asks for a second bite at the apple in requesting this court grant them additional bond hearings.

(*Id.*).[6]

### III.   Jurisdiction

"[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004), *citing* U.S. Const., Art. I, § 9, cl. 2. Relief is available if such a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The United States Supreme Court has noted that the circumstance in which a habeas court's role has historically been "most extensive" includes "cases of … noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Boumediene v. Bush*, 553 U.S. 723, 780-783 (2008) (finding noncitizens determined to be enemy combatants, who were detained at Guantanamo Bay, Cuba, were entitled to the "privilege" of habeas corpus regarding their detention).

Federal law codified at 8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." This provision "does not, however, preclude habeas jurisdiction over constitutional claims or questions of law." *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations

---

[6] *Calmo* is not directly relevant to the issue before the Court. *Calmo* involved a legal permanent resident who was granted asylum and was afterwards convicted of multiple criminal offenses. In the order denying bond, finding Calmo both a danger to the community and a flight risk, the IJ noted Calmo's gang membership, and convictions for battery and brandishing a loaded firearm. *See Calmo v. Sessions*, No. 17-cv-07124, 2018 WL 2938628, at *1 (N.D. Cal. June 12, 2018). Calmo appealed to the Board of Immigration Appeals, which denied relief. In federal court Calmo asserted the IJ erred by failing to discuss, *inter alia*, his employment history. *Id.* at *4. The court denied Calmo's due process claim, finding he had received an individualized determination that he posed a danger to the community, which was supported by the record; the court did not discuss the finding that Calmo was also a flight risk. *Id.* at *5.

omitted). "Claims that the discretionary bond process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of 28 U.S.C. § 2241." *Id.* (internal quotations and bracketing omitted). Notably, in *Wilkinson v. Garland* the Supreme Court explained that, in the context of an immigration proceeding, the application of a legal standard "to an established set of facts is a quintessential mixed question of law and fact" and a decision by the immigration courts is therefore reviewable. 601 U.S. 209, 212 (2024). Accordingly, a federal district court maintains habeas jurisdiction to review "bond hearing determinations for constitutional claims and legal error." *Singh v. Holder*, 638 F.3d 1196, 1200-01 (9th Cir. 2011). *See also Demore v. Kim*, 538 U.S. 510, 516 (2003); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). Section 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law," which the Ninth Circuit has held includes "application of law to undisputed facts…." *Singh*, 638 F.3d at 1202 (internal quotations omitted). *See also Miranda v. Garland*, 34 F.4th 338, 373 n.1 (4th Cir. 2022) (Urbanski, J., concurring) ("Whether noncitizens receive due process 'is not a matter of discretion' and is subject to judicial review."); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 960 (N.D. Cal. 2019); *Garcia v. Unknown Party*, No. 24-cv-03062, 2025 WL 3173641, at *4 (D. Ariz. Oct. 10, 2025) (finding "'questions of law' raised in the application or interpretation of detention statutes" can properly be considered pursuant to § 2241, *quoting Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011)), *report and recommendation adopted*, 2025 WL 3172716 (D. Ariz. Nov. 13, 2025).

The federal courts have consistently held that claims challenging the procedural adequacy of bond hearings, including whether the standard of proof was properly applied and whether the findings were supported by the necessary quantum of evidence, are reviewable. *See*, *e.g.*, *Perez v. Wolf*, 445 F. Supp. 3d 275 (2020). Accordingly, the Court has jurisdiction to review an IJ's discretionary bond denial where that bond denial is challenged as legally erroneous or unconstitutional. *See Kharis v. Sessions*, No. 18-cv-04800, 2018 WL 5809432 at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases). *See also*

*Soriano v. Hernandez*, ___ F. Supp. 3d ___, 2026 WL 969764, at *3 (W.D. Wash. 2026); *Perez v. Paulk*, ___ F. Supp. 3d ___, 2026 WL 961948, at *2 (M.D. Ga. 2026).

According, the Court has jurisdiction to review the IJ's discretionary denial of bond because that denial is challenged as legally erroneous and in violation of Petitioner's federal constitutional right to substantive and procedural due process. *See De La Cruz Sales v. Johnson*, 323 F. Supp. 3d 1131, 1139 (N.D. Cal. 2017) (concluding an immigrant's claims were reviewable by the district court where the bond determination was challenged as constitutionally flawed); *Obregon v. Sessions*, No. 17-cv-01463, 2017 WL 1407889, at *4 (N.D. Cal. Apr. 20, 2017); *Castaneda v. Aitken*, No. 15-cv-01635, 2015 WL 3882755, at *7-8 (N.D. Cal. June 23, 2015). Although the Court must be careful not to encroach upon "the IJ's discretionary weighing of the evidence," *Slim v. Nielson*, No. 18-cv-02816, 2018 WL 4110551, at *4 (N.D. Cal. Aug. 29, 2018), the federal district courts have concluded that § 1226(e) does not bar a federal district court from concluding that "[t]he evidence before the IJ failed, as a matter of law, to prove flight risk or danger." *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008). *See also Lemus Crispin v. Bondi*, No. 26-cv-191, 2026 WL 768859, at *5 (E.D. Va. Mar. 18, 2026) (finding the IJ improperly relied on "three facts that do not pass constitutional muster" in holding that petitioner failed to show he is not a risk of flight"). Notably, in a recent case the District of Rhode Island concluded a § 2241 habeas petitioner's challenge to an IJ's bond decision was "precisely" the kind of case that is appropriate for judicial review. *See Garcia v. Hyde*, No. 25-cv-585, 2025 WL 3466312, at *5 (D.R.I. Dec. 3, 2025). Based on the nature of the *Garcia* petitioner's challenge, the District of Rhode Island concluded that § 1226(e) did not divest it of subject-matter jurisdiction over the petitioner's claim because the statute did not per se prohibit a finding that a bond hearing must comport with the noncitizen's right to due process of law and federal law. *Id. See also Perez Velasquez v. Bondi*, No. 26-cv-01759, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026); *W.T.M. v. Bondi*, No. 2:25-cv-02428, 2026 WL 262583, at *1 (W.D. Wash. Jan. 30, 2026).

## IV.    Analysis

### A.    The IJ's decision does not comport with federal law

A habeas court's review of an IJ's determination of flight risk involves a mixed question of law and fact and the determination is reviewed for an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 779, 784-785 (9th Cir. 2024), *citing Wilkinson*, 601 U.S. at 212. *See also Anyanwu v. Bondi*, 25-cv-995, 2025 WL 3466910, at *4 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025). Bond may be denied after an immigration custody redetermination hearing only if the government proves by clear and convincing evidence that the noncitizen poses a danger to the community, or proves by a preponderance of the evidence that the noncitizen poses a flight risk. *See*, *e.g.*, *Hernandez-Lara*, 10 F.4th at 41. In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "the Supreme Court held that [section] 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, [but] it left open the question of whether the Due Process Clause does." *Darko v. Sessions*, 342 F. Supp. 3d 429, 434–35 (S.D.N.Y. 2018). The majority of courts that have considered the question have found that due process requires the government to bear the burden of justifying a noncitizen's non-mandatory detention. *See*, *e.g.*, *Soto-Medina v. Lynch*, ___ F. Supp. 3d ___, 2026 WL 161002, at *6-8 (W.D. Mich. 2026), *citing Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (requiring clear and convincing evidence to justify civil commitment because "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause"), *and Addington v. Texas*, 441 U.S. 418, 427 (1970) ("The individual should not be asked to share equally with society the risk of error when the possible injury to the individual is significantly greater than any possible harm to the state.").

> Thus, to obtain habeas relief based on an error of law or an error in the application of law in violation of the noncitizen's right to due process, the noncitizen must show that the IJ failed to place the burden of proof on the Government to either show dangerousness by clear and convincing evidence or flight risk by a preponderance of the evidence. … The noncitizen can make this showing either by: (1) demonstrating that the IJ

erred because the evidence itself could not, *as a matter of law*, have supported the IJ's decision to deny bond; or (2) pointing to the IJ's opinion itself and showing that the IJ failed to apply the correct standard to the facts.

*Picado v. Hyde*, No. 26-cv-065, 2026 WL 352691, at *6 (D.R.I. Feb. 9, 2026) (emphasis added and internal quotations omitted).

A federal court may reverse a decision by an immigration court that a noncitizen is a flight risk if the agency abused its discretion in so finding. *Martinez*, 124 F.4th at 779-80. The following are factors an IJ considers in making determination as to flight risk: (1) whether the noncitizen has a fixed address in the United States; (2) the noncitizen's length of residence in the United States; (3) the noncitizen's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the noncitizen's employment history; (5) the noncitizen's record of appearance in court; (6) the noncitizen's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the noncitizen's history of immigration violations; (8) any attempts by the noncitizen to flee prosecution or otherwise escape from authorities; and (9) the noncitizen's manner of entry to the United States. *See, e.g.*, *Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (B.I.A. 2020); *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006); *Matter of Saelee*, 22 I & N Dec. 1258 (B.I.A. 2000). *See also Osorio-Ramirez v. Hodgson*, 439 F. Supp. 3d 10, 13 (D. Mass. 2020); *Sinsaeng v. Lynch*, No. 15-cv-0701, 2016 WL 1752953, at *2 (D. Ariz. May 3, 2016).

Generally, IJs must sufficiently explain their reasoning to permit appellate or judicial review of their decisions. *See Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023). Of course, the IJ need not "discuss ad nauseam every piece of evidence," *Pan v. Gonzales*, 489 F.3d 80, 87 (1st Cir. 2007), or "spell out every last detail of [their] reasoning" *Rivera-Medrano v. Garland*, 47 F.4th 29, 39 (1st Cir. 2022). However, at the very least, "the logical underpinnings" of the IJ's reasoning must be clear from the record in order to "provide [for] intelligent review." *Lopez-Gomez v. Bondi*, 154 F.4th 1, 4 (1st

Cir. 2025). In a similar circumstance, i.e., in the context of review of the BIA's decisions affirming an IJ's decision denying the reopening of proceedings, the federal Circuit Courts of Appeals have opined that although "the BIA need not spell out every last detail of its reasoning *where the logical underpinnings are clear from the record*, it is obligated to offer more explanation *when the record suggests strong arguments ... that the agency has not considered*." *Rivera-Medrano*, 47 F.4th at 39 (emphasis added). *Cf. Camacho v. Whitaker*, 910 F.3d 378, 381 (8th Cir. 2018) (explaining the BIA's obligation to "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted.").

The Ninth Circuit Court of Appeals has not directly addressed the issue presented in this matter, i.e., an IJ's unexplained decision denying bond because it summarily concludes the noncitizen is a flight risk. In the context of the Board of Immigration Appeals' denial of motions to reopen removal proceedings, the Ninth Circuit Court of Appeals has found the Board of Immigration Appeals ("BIA"), i.e., the Executive Office for Immigration Review, has an "obligation" to "provide a reasoned explanation for its actions." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005). The Ninth Circuit has concluded that "[d]ue process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument." *Su Hwa She v. Holder*, 629 F.3d 958, 963 (9th Cir. 2010). For example, in *Rodriguez–Lariz v. I.N.S.*, where "the BIA merely repeated petitioners' claims and summarily dismissed them without even purporting to engage in any substantive analysis or articulating any reasons for its decision," the Ninth Circuit Court of Appeals remanded for further proceedings. 282 F.3d 1218, 1227 (9th Cir. 2002). *See also Tadevosyan v. Holder*, 743 F.3d 1250, 1257-58 (9th Cir. 2014). Notably, in a partial concurrence and partial dissent in *Chavez Esquivel, et al., v. Bondi*, Judge Paez of the Ninth Circuit Court of Appeals opined:

> … It is undisputed that "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence, a 'general statement that [the agency] considered all the evidence before [it]' may be sufficient."

- 13 -

*Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011); *accord Cruz v. Bondi*, 146 F.4th 730, 739 (9th Cir. 2025). "*But, where there is any indication that the BIA did not consider all of the evidence before it, a catchall phrase does not suffice, and the decision cannot stand. Such indications include misstating the record and failing to mention highly probative or potentially dispositive evidence.*" *Cole*, 146 F.3d at 771–72. *Thus, a boilerplate statement is insufficient where the agency fails to engage with significant evidence supporting a petitioner's claim; rather, the agency must show its work.*

The agency did not even attempt to show its work in this case. To emphasize, in finding Chavez Esquivel failed to establish a likelihood of torture, the IJ and BIA failed to discuss [probative] evidence … I cannot construe the agency's decision—which did not mention any of this evidence, let alone explain how it was insufficient to establish a likelihood of torture—as in fact providing "reasoned consideration" to this evidence, as our precedents require. *Id.*

We are left in the dark as to how the agency found Chavez Esquivel's risk of torture insufficient to qualify for CAT relief. In my view, the better explanation for the agency's lack of analysis of the ample contrary evidence is that the agency simply "ignored" it or did not adequately consider it. *Cruz*, 146 F.4th at 740.

*Chavez Equivel, et al., v. Bondi*, No. 18-70983, 2026 WL 837286, at *3-4 (9th Cir. Mar. 26, 2026).

Moreover, in 2005 the Ninth Circuit Court of Appeals reinforced a standard that executive branch proceedings must adhere to when depriving an individual of their liberty:

We think it goes without saying that IJs and the BIA are not free to ignore arguments raised by a petitioner. *See Chen v. Ashcroft*, 362 F.3d 611, 620 (9th Cir. 2004) … *Immigration judges, although given significant discretion, "cannot reach their decisions capriciously" and "must indicate 'how[they] weighed the factors involved' and 'how [they] arrived at [their] conclusion.'" Yepes–Prado v. INS*, 10 F.3d 1363, 1370 (9th Cir. 1993), *quoting Dragon v. INS*, 748 F.2d 1304, 1307 (9th Cir. 1984)).

*Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005), *cited in Garcia Gomez v. Gonzales*, 498 F.3d 1050, 1051 (9th Cir. 2007). *See also Arrozal v. I.N.S.*, 159 F.3d 429, 433 (9th Cir. 1998).

Pursuant to this line of reasoning, an immigration judge abuses their discretion if they fail to show proper consideration of all factors and fail to state specific reasons for denying release from detention on bond or otherwise.

Diligent research has revealed no published legal opinion from a federal Circuit Court of Appeals with regard to an unexplained decision by an IJ denying bond based on a determination the noncitizen is a flight risk. However, the federal district courts considering a fact pattern similar to the instant case have generally held similarly to a recent decision issued by the United States District Court for the District of Washington:

> Petitioner has demonstrated the requisite abuse of discretion. The record unequivocally contradicts the immigration judge's flight-risk finding. Petitioner has … family members in the local area [], steady employment, and community connections developed during an over-ten-year period. Petitioner has no criminal history, and her lack of or irregular contact with ICE ERO during the period from 2020 to 2025 is more consistent with the COVID pandemic and petitioner's struggles as a victim of domestic violence than with any risk that she will flee, particularly given her pending application for a U Visa, as to which she will have every incentive to cooperate and appear for future proceedings. … no record of the bond hearing was created or provided for the Court's review, and *no explanation of the immigration judge's reasoning has been offered, the Court is left without information concerning … whether the immigration judge considered the relevant (or indeed any) factors in reaching his decision.* The Court must therefore conclude that the immigration judge's flight-risk finding constitutes an abuse of discretion and that petitioner's continued detention serves no immigration purpose. The Court will exercise its discretion to order petitioner's release. ...

*Escalante Perez v. Hernandez*, No. 26-cv-0956, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026). *See also Ramos v. Barr*, No. 20-CV-06622, 2020 WL 13554813, at *3 (W.D.N.Y. Dec. 29, 2020);[7] *infra* at 23-24.

---

[7] There is no record of the IJ's rationale in denying bond, and instead the decision is simply reflected by a one-page form. []. Thus, it is not clear on what basis it was determined that Petitioner should not be released. … he has no criminal history, and according to his documentation, he appears to have family and friends willing to support him and provide him a residence during the pendency of his removal proceedings. [].
*Ramos v. Barr*, No. 20-cv-06622, 2020 WL 13554813, at *3 (W.D.N.Y. Dec. 29, 2020).

In reviewing the IJ's decision the question is not whether the Court believes that the record establishes, by a preponderance of the evidence, that Petitioner is a flight risk. *See Nguti v. Sessions*, No. 16-cv-6703, 2017 WL 5891328, at *3 (W.D.N.Y. Nov. 29, 2017). Instead, the issue is whether the IJ "relied upon proof that – as a matter of law – could not establish" that conclusion. *Id. See also Judulang*, 562 F. Supp. 2d at 1127. *Cf. Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1004-05 (N.D. Cal. 2018) (concluding a dangerousness finding violated due process where the IJ relied solely on evidence that did not support that conclusion); *Obregon*, 2017 WL 1407889, at *7 (expressing concern that "the IJ may not have adequately considered all of the available evidence in assessing petitioner's present dangerousness" based on inaccuracies and gaps in the IJ's decision). When the habeas court "is left to speculate concerning how the immigration judge viewed the evidence in light of the applicable factors," the court "must conclude that the immigration judge failed to do so, which constitutes an abuse of discretion." *Vasquez Lopez v. Hernandez*, ___ F. Supp. 3d ___, No. 26-cv-0775, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026). *Compare Acero v. FCI Berlin*, ___ F. Supp. 3d ___, 2026 WL2026 WL 821896, at *3 (D.N.H. Mar. 25, 2026); *Yinpiao Zhou v. Trump*, 2026 WL 937125, at *3 (S.D. Cal. Apr. 7, 2026).[8]

In this matter, other than the initial determination by ICE ERO that Petitioner had access to a vehicle, i.e., a semi-truck, there is no *record evidence* that the IJ could have relied upon to find Petitioner a flight risk. The record in this matter indicates that, as a matter of law and given the burden was on the government to establish flight risk, any

[8] Here, the Immigration Judge applied the *Guerra* factors and denied Petitioner's bond on the basis that Petitioner posed a flight risk. Ret., Ex. 3. The Immigration Judge *explained* that although Petitioner has lawful status and claims to be employed, *he does not have a fixed address*, *his proposed sponsor lives in a different part of the country*, and *he has spent "a considerable time not working and [has been] flying a drone over various facilities." Id.* Additionally, *Petitioner has violated detention center rules*, which "casts doubt" on his willingness to follow Court and immigration orders. *Id.*, Ex. 5 at 2-3. These facts suggested that Petitioner posed a flight risk. *Id.* at 3.
*Yinpiao Zhou v. Trump*, No. 25-cv-3503, 2026 WL 937125, at *3 (S.D. Cal. Apr. 7, 2026) (emphasis added).

Case 2:26-cv-01306-RM    Document 10    Filed 04/24/26    Page 17 of 28

"proof" the IJ relied upon to establish that Petitioner was a flight risk did not rise to the level of a preponderance of the evidence. Accordingly, the IJ's decision was legal error. *Kharis*, 2018 WL 5809432, at *9.[9] *See also Zheng v. Rokosky*, ___ F. Supp. 3d ___, 2026 WL 800203, at *6 (D.N.J. 2026). [10]

---

[9] The Court agrees with Kharis that the BIA's decision does not mention "highly probative" evidence on which Kharis relied. [] Notably, it treated [a notice] and the underlying allegations as unambiguously supporting a flight risk finding, without any discussion of Kharis's argument and supporting evidence that [the notice] makes it significantly more difficult to travel internationally. …
*Kharis v. Sessions*, No. 18-cv-04800, 2018 WL 5809432, at *9 (N.D. Cal. Nov. 6, 2018).

[10] The IJ held in the "alternative" that [Zheng], although not a danger to the community, presented a "significant flight risk for which no amount of bond would ameliorate that flight risk." (ECF No. 6-5 at 6). But *she provided no analysis whatsoever and gave no indication of the factual basis for her decision*. Respondents concede that the IJ "did not provide an analysis as to why she reached that decision" and that it is "unclear" how she reached that decision. (Hearing Tr. at 3-4). As such, it is impossible for this Court to perform any meaningful review of the IJ's decision and conclude that there was an individualized determination. The transcript is devoid of any indication that the IJ "actually consider[ed] the evidence and argument[s]" that the parties presented; rather, she "mere[ly] rubber-stamp[ed]" the Respondents' decision to deny bond. *Abdulai*, 239 F.3d at 549; *see also Goldberg*, 397 U.S. at 271 [] (holding that the decisionmaker "should state the reasons for his determination and indicate the evidence he relied on"); *Morrissey v. Brewer*, 408 U.S. 471, 487 [] (1972) (same). Due process demands more.
   This case is easily distinguishable from cases where courts have upheld the fundamental fairness of a bond determination. For example, in the case on which Respondents rely, *De Souza v. Soto*, No. 25-18734, 2026 WL 102946, at *3 (D.N.J. Jan. 14, 2026), the IJ, in finding Petitioner a flight risk noted: "the lack of evidence of a fixed address"; that "the only relative listed by Petitioner lived in Massachusetts and Petitioner admitted that he had not lived in Massachusetts in the past four years"; and "that Petitioner overstayed his visa by four years, waited until two days before the bond hearing to apply for asylum, and provided no explanation why he did not apply for asylum at any point in the past four years."
                                   ***
   Here, the IJ's decision stands in stark contrast to these decisions as it is not supported by any detail or reference to any factual evidence in the record. *The IJ did not provide even a minimal articulation of the basis of her decision. She simply stated in mere conclusory fashion that Petitioner was a flight risk. That is not an individualized assessment. This was not a fundamentally fair bond hearing.*
*Zheng v. Rokosky*, ___ F. Supp. 3d ___, 2026 WL 800203, at *6 (D.N.J. 2026) (emphasis added).

- 17 -

**B. Violation of Petitioner's due process rights**

Substantive due process protects individuals from government action that interferes with their fundamental rights, such such as the individual's personal liberty. *See*, *e.g.*, *Regino v. Staley*, 133 F.4th 951, 959-60 (9th Cir. 2025). "Governmental action that infringes a fundamental right is constitutional only if 'the infringement is narrowly tailored to serve a compelling state interest.'" *Id.* at 960. Procedural due process ensures that the deprivation of liberty may not occur absent a finding that the infringement does indeed serve a compelling state interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The right to substantive due process thus protects noncitizens from arbitrary confinement by the government. The Fifth Amendment's Due Process Clause extends to all persons, regardless of status. *See*, *e.g.*, *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025). Thus noncitizens, such as Petitioner, are entitled to its protections. *See id.* Immigration detention is civil detention, and civil detention violates a noncitizen's substantive due process rights except in certain "special and 'narrow' nonpunitive 'circumstances' … where a special justification ... outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690, *quoting Foucha*, 504 U.S. at 80. *See also Kansas v. Hendricks*, 521 U.S. 346, 356 (1997), *cited in Ramirez v. Noem*, No. 25-cv-02136, 2025 WL 3270137, at *8 (D. Nev. Nov. 24, 2025).

A protected liberty interest may arise from a conditional release from physical restraint, such as when Petitioner was released into the United States on a visa, and again when the government did not pursue further removal proceedings after issuing a deficient Notice to Appear, and again when the government gave Petitioner permission to work in the United States. *See Young v. Harper*, 520 U.S. 143, 147-49 (1997). Even when a federal statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)

(holding due process requires a hearing before the revocation of parole). To determine whether a specific conditional release rises to the level of a protected liberty interest, "[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey." Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole "enables [the parolee] to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.*

Comparing the liberty interest before the Court with the liberty interest characterized by *Morrisey*, Petitioner's release upon his entry into the United States on a visa, and the affirmation of this liberty when the government granted him permission to work in the United States, indicates Petitioner has a protected substantive due process liberty interest in his continued freedom from detention. Among other freedoms, the government allowed Petitioner to live with and provide for his mother, to work, and to become involved in his religious and secular community in the United States while seeking to become a lawful permanent resident of the United States. Accordingly, Petitioner was and is entitled to procedural due process of law with regard to his liberty in the United States.

The federal courts interpret the Due Process Clause procedural protections afforded a noncitizen to protect their substantive due process liberty interest consistent with the longstanding precedent recognizing these protections must be balanced with the government's countervailing interests in immigration enforcement. To determine whether civil detention violates a detainee's right to liberty the federal courts apply the three-part

test examining procedural due process set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *Hernandez v. Sessions*, 872 F.3d at 993; *Hernandez-Lara*, 10 F.4th at 27; *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). *Mathews* requires consideration of (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

**1. "[T]he private interest that will be affected by the official action"**

The private interest affected by the official action in this matter is the most sacred and profound right afforded by the United States Constitution, i.e., the right to liberty, to one's personal freedom, to be free from being placed in a de facto cage without having committed any crime or otherwise violated or abused any agreement with or privilege afforded by the government. Petitioner has a significant private interest in avoiding detention, as one of the "most elemental of liberty interests" is to be free from detention. *Hamdi*, 542 U.S. at 529. Additionally, the conditions of Petitioner's detention further tip this first factor in his favor. When assessing this factor, courts consider the conditions under which detainees are currently held, including whether a detainee is held in conditions indistinguishable from criminal incarceration. *See Hernandez-Lara*, 10 F.4th at 28 (involving a noncitizen detainee held "alongside criminal inmates" at a county jail); *Velasco Lopez*, 978 F.3d at 852 (observing a noncitizen was "not detained" but, rather, was incarcerated in conditions identical to those imposed on criminal defendants). *See also Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025).

Petitioner is detained at the CoreCivic detention facility in Eloy, Arizona. The Eloy facility opened in 1994 and was designed to imprison people in criminal custody. *See* U.S. DEP'T OF HOMELAND SEC., IMMIGR. & CUSTOMS ENFORCEMENT OFF. OF PRO. RESP., INSPECTIONS, & DETENTION OVERSIGHT, OFF. OF DETENTION OVERSIGHT

COMPLIANCE INSPECTION, ENFORCEMENT & REMOVAL OPERATIONS, PHX. FIELD OFF., ELOY DET. CENTER (2013), *available at*: https://www.ice.gov/doclib/foia/odo-compliance-inspections/eloyDetentionCenterEloyAzNov5_7_2013.pdf. (last visited Apr. 20, 2026). The facility has since evolved into an ICE detention facility. Concerns have been raised with regard to the conditions of confinement at the Eloy Detention Center.

> Between August 2022 and May 2023, [the Office for Civil Rights and Civil Liberties] opened 11 complaint investigations involving noncitizens in ICE custody at Eloy. The allegations raised concerns related to medical care, *excessive lockdowns*, unsanitary living conditions, inadequate access to showers and recreation, and unhygienic food service operations. As a result of these complaints, CRCL conducted a multidisciplinary investigation at Eloy in September 2023 to examine the facility and assess issues raising civil rights and civil liberties concerns .Findings and Recommendations On April 4, 2024, CRCL issued ICE an Onsite Recommendation Memorandum based on its investigation conducted with the assistance of contract subject matter experts. *The memo included 24 recommendations in the general areas of conditions of detention, medical care, mental health care, and environmental health and safety*.

U.S. DEP'T OF HOMELAND SEC., OFF. FOR CIVIL RIGHTS & CIVIL LIBERTIES, SUMMARY OF CRCL'S RECOMMENDATIONS & ICE'S RESPONSE, ELOY DET. CENTER (2024), *available at*: https://www.documentcloud.org/documents/25866584-24-1216-crcl-close-summary-ice-eloy-detention-center-508/#document (last visited Apr. 20, 2026) (emphasis added).

Additionally, there can be no doubt that Petitioner is experiencing many deprivations usually present during criminal incarceration, including loss of contact with friends and family, loss of earned income, a lack of privacy, and, most fundamentally, a lack of freedom of movement. *See Gunaydin*, 784 F. Supp. 3d at 1187.

Accordingly, the first *Matthews* factor weighs in favor of Petitioner.

**2. "[T]he risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"**

The process afforded Petitioner to date has not comported with his right to procedural due process. Petitioner was initially deemed a flight risk and detained upon a finding that he had access to a vehicle, i.e., a semi-truck that he was driving as an employee. Petitioner was then denied bond during a proceeding which most likely involved a pre-determined outcome, and there is no record of any evidence proffered to support the IJ's decision nor is there a reasoned explanation for the IJ's decision. It is highly unlikely that the government proffered a preponderance of evidence to support a finding that Petitioner was a flight risk; it is unlikely Petitioner would quit his job and leave his mother without support, and he has a substantial interest in proceeding with his colorable claim for asylum. Petitioner has no criminal history. The Ninth Circuit has held that when there is a substantial liberty interest at stake, the government should have the burden of proving that an individual is a flight risk before depriving the individual of their liberty. *See Singh*, 638 F.3d at 1203-04. There is no such evidence in the record. Additionally, at this time, it is unlikely that any additional procedural measures, such as another bond hearing conducted by the same *agency*, would protect Petitioner's due process interests.

The Court may take judicial notice of the concerns expressed by Senior United States District Judge William Martinez, of the United States District Court for the District of Colorado, in an order issued April 7, 2026:

> Moreover, the Court is concerned that the immigration courts are not affording immigrants fair bond hearings. Recently, this Court learned that an Immigration Judge ("IJ") in another case before it declined to release a petitioner on bond for whom it had ordered a bond hearing in a summary decision that merely stated, without any citation to specific facts:
>> After considering the totality of the circumstances and all relevant factors, the Court denies bond. If DHS bears the burden, the Court finds that DHS has met its burden to establish that the respondent is both a danger and a flight risk. If the respondent bears the burden, the

> Court finds that the respondent has not met his burden to establish that he is neither a danger to the community nor a significant flight risk such that release from custody is warranted.

*Quiroz Vacarias v. Noem et al.*, Civil Action No. 1:26-cv-0574-WJM, ECF No. 14-1.

> Based on the observations of fellow judges across the country, the Court is far from convinced this was an isolated incident. To the contrary, the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have preordained outcomes has become impossible to ignore. As a result, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude,...and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through post-hoc justifications." *Zheng*, 2026 WL 800203, at *11 (collecting cases). Given this reality, the Court will order Pal's immediate release.

*Pal v. Lyons*, No. 26-cv-1102, 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026).

In *Garcia Ortiz v. Henkey*, the District of Idaho court noted:

> Petitioner has also submitted evidence that Immigration Judges across the country are systemically denying bond to alien detainees, regardless of the weight of the evidence. For example, a former legal counsel to Immigration and Customs Enforcement describes how Immigration Judges in the Eastern District of Virginia have "abruptly and uniformly ceased" granting bond in post-habeas cases. Dkt. 19-6 at 2. Courts have echoed these concerns. The Southern District of West Virginia noted evidence that "immigration judges who provide neutral adjudications have been removed, and bond is systematically denied after a pro forma hearing with a predetermined outcome." *Chavez Ochoa*, 2026 WL 541144, at *2 n.4.

No. 26-cv-00043, 2026 WL 948275, at *4 (D. Idaho Apr. 7, 2026), *cited in Escalante Perez*, 2026 WL 1004559, at *2.

Footnote 1 in Judge Martinez's *Pal* order cites additional cases concluding an IJ's decision summarily denying bond was contrary to law, i.e.:

> *Zheng v. Rokosky, et al.*, ___ F. Supp. 3d ___, 2026 WL 800203, at *6 (D.N.J. Mar. 23, 2026) (ordering immediate release after "IJ erroneously stated that she lacked jurisdiction in direct defiance of [the] Court's Order,

failed to provide any explanation whatsoever for her supposed alternative holding that Petitioner is a flight risk, and by all appearances acted as a 'mere rubber-stamp'... for Respondents' predetermined decision to deny bond"); *Montero-Martinez v. Mattos, et al.*, 2026 WL 674497, at *1-2 (D. Nev. Mar. 9, 2026) (ordering release after petitioner's due process rights were violated when his bond was "revoked based on materially false information" regarding his criminal record); *Miri v. Bondi*, 2026 WL 622302, at *9 (C.D. Cal. Mar. 5, 2026) (ordering release after finding IJ abused its discretion in denying bond where they "did not explain the reasons for denying Miri's bond," "did not describe which *Martinez* factors were considered, if any, or what evidence was relied on," and "did not explain the reasons for denying Miri's bond and the record does not establish that the [IJ] relied on the appropriate factors"); *Rodriguez v. Greene*, 2026 WL 574961, at *12 (N.D. Ohio Mar. 2, 2026) (finding due process violation where "the IJ's decision ... contain[ed] zero reference to any record or arguments put forth by either party," denied bond "exclusively on jurisdictional grounds," and held in the "alternative" that the petitioner was a danger to the community and a flight risk "without supplying any reasoning [as to] how the IJ came to such a conclusion").

*Pal*, 2026 WL 937962 at *4 n.1.

The second *Matthews* factor weighs in favor of Petitioner.

**3. "[T]he Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."**

The government's interest in ensuring that noncitizens do not abscond and commit crimes is well-established and legitimate. *See Velasco Lopez*, 978 F.3d at 854. However, "any detention must bear a "reasonable relation" to the purpose of the detention. *Hernandez v. Sessions*, 872 F.3d at 990, *citing Zadvydas*, 533 U.S. at 690. Civil detention comports with due process only when a "special justification" outweighs the "individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690. As the Second Circuit explained in *Velasco Lopez*:

> [T]he Government has not articulated an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. .... When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time, as in this case, it separates families and removes from the community breadwinners, caregivers, parents, siblings

and employees. The Government articulates no public interest that any of this serves and we see none.

978 F.3d at 854-55. Indeed, common and fiscal sense suggest it is in the government's and the public's interest to limit the detention of aliens who are clearly not a danger nor a flight risk. Accordingly, the third *Matthews* factor weighs in favor of Petitioner.

Weighing the *Matthews* factors with regard to whether an immigration detainee's right to procedural due process was violated, in the Western District of Washington concluded:

> Here, the Court finds continued detention violates due process because detention has no reasonable relationship to the asserted governmental interest, which in this case is Petitioner's removal. The Court makes this finding as the record shows there is no rationale supporting a finding Petitioner is a flight risk or a danger to the community, and what is known about him cuts against such a finding. Simply ordering Respondents provide another bond hearing does not alter the fact Petitioner is not a flight risk or a danger and should be released. Rather, ordering another bond hearing simply prolongs detention lacking any support. The Court is also mindful that Petitioner will not be released upon the filing of this report and recommendation and his detention is prolonged further pending adoption by the assigned District Judge.
>
> With no changes in Petitioner's history since being before the immigration judge over a decade prior, the Court fails to see how this determination of Petitioner's "danger to the community" and "flight risk" is supported by the record. *See, e.g.*, *W.T.M. v. Bondi*, 2026 WL 262583, at *4 (W.D. Wash. Jan. 30, 2026) (finding bond denial "constitutionally deficient" where the immigration judge provided no reasoning but relied on forms reflecting "pending" charges that were dismissed and a recalled bench warrant to find flight risk). *See also Garcia v. Hyde*, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) ("Rather, the question is whether the evidence that the IJ relied on at the bond hearing could—as a matter of law—establish that [petitioner] posed a flight risk."). The Court finds that this risk of erroneous deprivation weighs in Petitioner's favor.

*Zambrano-Vazquez v. Noem*, No. 26-cv-122, 2026 WL 657129, at *3 (W.D. Wash. Mar. 9, 2026).

Similarly, considering all of the *Matthews* factors leads to the conclusion that Petitioner's right to due process of law is violated by his continued detention. Apparently,

at no point during Petitioner's bond hearing did the IJ expressly grapple with a substantial, well-supported argument that Petitioner was not a flight risk. The constitutional guarantee of due process requires more. *See Tadevosyan*, 743 F.3d at 1258 ("Due process and [Ninth Circuit] precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument." (citation omitted)).

Respondents have proffered no evidence showing that Petitioner is a flight risk. The government's interest in continuing to detain Petitioner is diminished because he has no criminal record and he has significant ties in the United States—factors that bear directly on flight risk and dangerousness. *See*, *e.g.*, *Cruz-Reyes v. Bondi*, ___ F. Supp. 3d ___, 2026 WL 332315, at *7 (S.D. Tex. 2026), *citing Pinchi*, 2025 WL 1853763, at *2. The government has not identified any new information specific to Petitioner's circumstances to undermine its own prior determination(s) that he does not pose a danger or a flight risk if allowed to remain at large in the population during further removal proceedings. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *Valdez v. Joyce*, No. 25-CV-4627, 2025 WL 1707737 at *3 & n.6 (S.D.N.Y. June 18, 2025) ("[T]he present allegation by ICE that Petitioner is at risk of flight is directly at odds with the contrary Department of Homeland Security ("DHS") decision to release Petitioner on his own recognizance…"). The government's only apparent interest in taking Petitioner into custody, which actually places an additional fiscal and administrative burden on the government and the citizens of the United States, is to fulfill a quota of arrests set by the current administration. *See*, *e.g.*, *Vasquez Perdomo v. Noem*, 790 F. Supp. 3d 850, 868 (C.D. Cal. 2025).

## V.    Remedy

The federal district courts, particularly those in Florida, Texas, Arizona, California, Washington, New York, Pennsylvania, and Minnesota, began adjudicating an influx of § 2241 habeas cases challenging unlawful detention in October of 2025. "Since

that time, the flood gates of habeas have seemingly unleashed unending habeas challenges to the Government's detention of noncitizens." *Mendoza v. Noem*, ___ F. Supp. 3d ___, 26-cv-0728, 2026 WL 809441, at *9-10 (W.D. Tex. Feb. 26, 2026).

"Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "A federal court is vested with the largest power to control and direct the form of judgment to be entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]" *Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir. 1994) (internal quotation marks and citations omitted). Generally, when granting § 2241 petitions based on a due process violation in immigration proceedings, the federal courts have ordered a bond hearing conducted before an immigration judge as required by the petitioner's right to be free of detention absent procedural due process. In the context of noncitizens who have been in the United States with the government's initial acquiescence for a period of years and who are therefore detained pursuant to § 1226(a), the federal courts have ordered the government to bear the burden of justifying that continued detention is necessary because the noncitizen is a flight risk or a danger to the community, or to release the petitioner from custody under reasonable conditions of supervision. However, in more recent cases, when presented with a significant violation of a noncitizens' substantive due process right to liberty and procedural due process, the district courts have found that ordering the petitioner's immediate release, rather than ordering a bond hearing, is warranted. *See*, *e.g.*, *Cruz-Reyes*, 2026 WL 332315, at *5.

In circumstances such as those presented in the instant petition, the Court could order Petitioner's immediate release from detention rather than order he be given another bond hearing, given the likelihood that another bond hearing will not produce a result commensurate with Petitioner's constitutional right to due process. The record before the Court indicates Petitioner is neither a flight risk nor would he be a danger to the community if released. When a noncitizen "has demonstrated a profound liberty interest in his freedom from civil detention and a concrete, ongoing deprivation of that liberty

without any process provided by Respondents to justify his detention," due process concerns weigh heavily in favor of granting immediate release. *Id.*, 2026 WL 332315, at \*6.

Accordingly,

**IT IS RECOMMENDED that** the petition for habeas relief pursuant to § 2241 (ECF No. 1) be **granted**, and the Court order Petitioner's release from detention on bond, on recognizance, or under supervision, within 48 hours of the issuance of the Court's order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. Rule 72(b), Federal Rules of Civil Procedure, provides that the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Pursuant to Rule 7.2(e)(3) of the Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed ten (10) pages in length. Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 23rd day of April, 2026.

_____
Camille D. Bibles
United States Magistrate Judge

- 28 -